# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CHESTER RAYMOND MOORE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DAN HIGGINS, TERRY MILAM, )<br>LEE ROY M. TAYLOR, and )<br>the CITY OF ST. JOHN, )<br>)<br>Defendants. ) | Case No. 4:06-CV-00973 SNL |

## MEMORANDUM

This matter comes before the Court on Defendants' motion for summary judgment. (Doc. #19, filed Oct. 24, 2007.) Plaintiff was required to respond and/or oppose Defendants' motion no later than December 31, 2007. (Doc. #23, filed Dec. 3, 2007.) Notwithstanding, upon Plaintiff's motion (Doc. #24, filed Dec. 27, 2007), the Court granted leave to file an out-of-time- response up to and including March 7, 2008. (Doc. 26, filed Feb. 28, 2008.) As of this time, Plaintiff has failed to respond to Defendants' motion (Doc. #19).

### *LEGAL STANDARD*

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## BACKGROUND

The disputed events took place during the early morning hours of June 27, 2004, in the City of St. John, County of St. Louis, Missouri.

Sometime before or near 1:30 a.m., Defendant Dan Higgins ("Higgins"), Sergeant of the St. John Police Department, witnessed a pickup truck change lanes without signaling. Higgins followed the truck into a nearby Mobil service station, parked directly behind it, and activated his spotlight. Higgins arrested the driver of the pickup, identified as Johnny Ray Moore ("Johnny"), and had him transported to the Police Department by a second officer. The passenger riding in Johnny's vehicle ("Cassidy") was permitted to leave the area, yet appears to have stayed on the scene. Higgins then called for a tow truck to impound Johnny's vehicle and remained on the scene.

Plaintiff in this cause is Johnny's father. Shortly following the arrest, Plaintiff arrived at the Mobil station, accompanied by two females. Without delay, Plaintiff approached Higgins' patrol car, where Higgins was seated; and in (what may have been) a "gruff" tone, Plaintiff asked Higgins why his son had been pulled over. Higgins immediately instructed Plaintiff to "back away." Failing to comply with Higgins' command, Plaintiff repeatedly asked Higgins why his son had been pulled over; to which Higgins (after exiting his patrol car) repeatedly responded, "get away from the car" and/or "step back."

As Plaintiff spoke, Higgins detected a strong odor of alcohol from Plaintiff's breath and noticed his eyes were watery and bloodshot, and his speech slurred. Furthermore, Higgins recognized Plaintiff as someone whom he had previously arrested for driving while intoxicated. Following repeated instruction to leave the area, Higgins anticipated a possible confrontation and/or arrest. Additionally, Cassidy (the passenger in Johnny's vehicle, *supra*) had approached the dispute and was standing several feet away. On that basis, he returned to his patrol car to obtain a pair of handcuffs and left the door open in the event he required the assistance of the police canine, seated in his patrol car.

Here, the purported facts become a bit dicey. Specifically, Higgins states that he witnessed Plaintiff placing his hands into (and removing his hands from) his pockets, and noticed a bulge in Plaintiff's pants. Acting upon the belief that Plaintiff may have been armed, Higgins approached Plaintiff from the back in order to conduct a search; but Plaintiff abruptly stepped forward, turned around to face Higgins, and raised his left arm with a clenched fist. In defense of

a possible assault, Higgins struck Plaintiff, causing Plaintiff to fall backwards. Higgins then called to his canine to "apprehend."

Plaintiff's version of the events are significantly different. Plaintiff stipulates that he repeatedly inquired about his son's stop, but states that he did in fact step back when directed to do so. Furthermore, Plaintiff testified in deposition that he did not attempt to touch, and was not touched by, Higgins. Rather, just before Higgins and the canine exercised force, Plaintiff had turned, and was walking toward, the convenience store. Without any provocation from Plaintiff, the canine ran toward him and Higgins shoved him, causing Plaintiff to fall to the ground.

In turning to the surveillance tapes of the disputed events, the video camera in Higgins' patrol vehicle failed to capture the physical confrontation. Notwithstanding, the video's audio feed evidences Higgins' directives to back away, and Plaintiff's relentless questioning. The video gathered from the service station surveillance camera, provides a birds' eye view, albeit somewhat modified, of the confrontation. Viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that, at the time Higgins and/or the canine exercised force, Plaintiff was complying with Higgins' final instructions and walking away.

It is uncontroverted that, once Plaintiff was lying on the ground, the canine was biting his head and legs. It is further uncontroverted that, aside from struggling against and/or resisting the canine's force, Plaintiff did not exhibit any forceful behavior toward Higgins. Nonetheless, the canine continued to bite Plaintiff, and Plaintiff's resulting movement impeded Higgins' ability to apply handcuffs. Once the handcuffs were applied, Higgins commanded the canine to stop the apprehension. Immediately thereafter, police officers from several different municipalities responded to the scene, and the canine was removed.

From the foregoing events, Plaintiff alleges extensive injury to his legs and head from the canine's biting, and further injury to the back of his head from Higgins' initial force. Following his arrest, Plaintiff was transported to the Police Station, where he received emergency medical care. The same evening, Plaintiff sought medical treatment from his physician, but has received no subsequent care for his injuries. As of the filing of the instant motion, Plaintiff's wounds have healed but he continues to experience occasional leg pain and has scarring on his head and lower legs.

## *ANALYSIS*

Plaintiff asserted the instant action alleging a host of State and Constitutional violations against Higgins, the City of St. John, and certain enumerated City officials.

## I. CLAIMS UNDER SECTION 1983

Section 1983 prohibits a person acting under color of state law from depriving another person of those "rights, privileges, or immunities secured by the Constitution and laws..." 42 U.S.C. § 1983 (2000). When stating a claim under Section 1983, plaintiff must establish (1) the deprivation of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was committed under "color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

### *i. As Against Defendant Higgins*

"The first step in a § 1983 analysis is 'to isolate the precise constitutional violation' which is alleged." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Next, "[i]f a violation could be made out on a favorable view of the parties' alleged facts, the next step is to ask whether the right was clearly established," i.e. " 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 965 (8th Cir. 2007)).

#### *a. Fourth Amendment Claims*

Based on the facts at bar, Plaintiff's claims relating to procedural due process, unreasonable seizure, and excessive force are properly analyzed under the Fourth Amendment.[FN1] *See Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (claims involving an arrest or investigatory stop of free citizen are analyzed under the Fourth Amendment's prohibition against unreasonable seizures) (citing *Graham v. Connor*, 90 U.S. 386, 394 (1989)).

> **FN1**. Insofar as Plaintiff states a claim for violation of substantive due process, he has failed to prove conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). Rather, Plaintiff's allegations fall within the context of an investigatory stop and arrest of a free citizen, and shall be properly and sufficiently addressed by that protection afforded by the Fourth Amendment.

4

*Graham*, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). *Accord Saucier v. Katz*, 533 U.S. 194, 204-05 (2001).

### *PROCEDURAL DUE PROCESS*

First, Plaintiff states that; prior to being placed under arrest, and in the absence of any probable cause; his liberty interests were violated. The Fourteenth Amendment protects against deprivation by the state of "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV §1 (2000). Before a deprivation occurs, the due process clause mandates certain procedural safeguards; and a Section 1983 action premised on procedural due process seeks to redress a state actor's unconstitutional denial of the same. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) *and Carey v. Piphus*, 435 U.S. 247, 259 (1978)).

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). *See also Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) ( " '[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied.' ") (quoting *Brower v. County of Inyo,* 489 U.S. 593, 596-97 (1989) (emphasis deleted)). Moreover, it is well-established that an officer may effect an arrest where he "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 349-54 (2001) (citing *Dunaway v. New York,* 442 U.S. 200, 208 (1979)).[FN2]

---

**FN2**. *See Atwater*, 532 U.S. at 347, 345 ("[A] responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review," and "police need not obtain an arrest warrant merely because a misdemeanor stopped short of violence or a threat of it...").

The probable cause inquiry asks whether, at the moment the arrest was made, a reasonably cautious police officer would believe that the individual arrested committed or was committing an offense. *Anderson v. Cass County, Mo.*, 367 F.3d 741, 745 (8th Cir. 2004) (citing *United States v. Oropesa,* 316 F.3d 762, 768 (8th Cir. 2003)). *See also Beck v. Ohio,* 379 U.S. 89, 91 (1964).

Here, Higgins states that he had probable cause to arrest Moore for failing to comply with his orders, resisting arrest, and obstruction of justice. The Court agrees. Specifically, Higgins reasonably believed that Plaintiff was intoxicated and unyielding, and may have been in possession of a weapon. Furthermore, pursuant to the St. John Municipal Code, it is unlawful for persons to (i) interfere with or obstruct an officer's performance of his duties and/or (ii) fail or refuse to obey an officer's reasonable order or direction. *See infra* note 3. On that basis, Higgins had probable cause to believe that Plaintiff was committing one or more misdemeanors, in that Plaintiff approached Higgins patrol car and ignored his repeated instructions.[FN3] *See Zurcher v. Stanford Daily*, 436 U.S. 547, 582-83 (1978) ("Probable cause to believe that the custodian is a criminal, or that he holds a criminal's weapons, spoils, or the like, justifies that fear, and therefore such a showing complies with the Clause.").

*See also Anderson*, 367 F.3d at 745 ("If the officers had probable cause, the arrests did not violate the Fourth Amendment and the officers are not liable.") (citing *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995)). *Accord Kelly v. Bender*, 23 F.3d 1328, 1330 (8th Cir. 1994) (citing *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991) (officer is entitled qualified immunity on an unlawful arrest claim if he had *arguable* probable cause to arrest)).

Plaintiff further alleges that Higgins filed false charges and/or reports, and/or misrepresented the disputed events. The Court in *Brady v. Maryland*, 373 U.S. 83 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution*." *Id*. at 87. The *Brady* Court focused on the accused's right to due process, rather than prosecutorial misdeeds. *Id*. at 87-88.

---

**FN3**. While the complaint does not allege a state law claim for Malicious Prosecution, the facts potentially give rise to the same. That having been said, the existence of probable cause precludes recovery for malicious prosecution. *See Parker v. Color Tile Supermart,*

*Inc.*, 655 S.W.2d 598, 599 (Mo. Ct. App. 1983) (citing *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479, 483 (Mo. 1972)).

In *White v. McKinley*, *supra*, the Eighth Circuit extended the holding in Brady to other law enforcement officers. *Id*. at 814. There, the Court stated that, *upon a showing of bad faith*, "an investigating officer's failure to preserve evidence potentially useful to the accused or their failure to disclose such evidence" could constitute a due process violation. *Id*. at 813-14 (citing *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004)).

Upon review, this Court notes that Higgins was never prosecuted for the charges filed against him and therefore does not qualify as a criminal defendant who has " 'constitutionally guaranteed access to evidence.' " *See White*, 519 F.3d at 813 (quoting *California v. Trombetta*, 467 U.S. 479 (1984)). In that way, the principle behind *Brady* and its progeny; to ensure a meaningful opportunity for criminal defendants to present a complete defense; is inapplicable to the instant dispute. Moreover, having found that Higgins had probable cause for at least one of the filed charges; and absent any showing that Higgins' report contained false information and/or that he acted with the intent to deprive Plaintiff of a fair trial; Plaintiff's claim fails as a matter of law. *See id*. at 814.

Accordingly, Plaintiff's claim shall be dismissed.

### *EXCESSIVE FORCE*

"[A]n arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U.S. at 396; and " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment," *id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Notwithstanding, " '[t]he right to be free from excessive force is [] clearly established...' " *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (quoting *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998)). "Claims that law enforcement officers have used excessive force during an arrest or other seizure are analyzed under the Fourth Amendment and its 'objective reasonableness' standard." *Graham*, 490 U.S. at 395.

Under this standard, " 'reasonableness ∴ is determined by balancing [the state's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.' " *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 188 (2004) (quoting *Delaware v. Prouse,* 440 U.S. 648, 654 (1979)). Depending on

7

the particular facts and circumstances of each case, courts may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, [] whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396; and the result of the force, *Crumley*, 324 F.3d at 1007 (citing *Foster v. Metro. Airports Comm'n*, 914 F.3d 1076, 1082 (8th Cir. 1990).  Courts should review excessive force claims from the perspective of "a reasonable officer on the scene," "at the moment" the force was employed; and should be mindful that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 396-97.

In turning to the facts at bar, construed in the light most favorable to Plaintiff, the Court declines to find Higgins' conduct *objectively reasonable*.  The uncontroverted evidence illustrates that, during the early morning hours of June 27, 2004, Plaintiff (i) approached Higgins, seated alone in his patrol car; and (ii) was visibly intoxicated, insubordinate, and unyielding.  Furthermore, Higgins reasonably feared a possible confrontation, struggle to effect an arrest, and/or the possible involvement of Cassidy; and/or that Plaintiff may have been armed with a weapon.  Notwithstanding the same, when Higgins and/or his canine "apprehended" Plaintiff, it appears that Higgins was not attempting to arrest Plaintiff; rather, he was making preparations to facilitate an apprehension, *if necessary*.  Plaintiff never exhibited any violent show of force and adhered to Higgins' final demands to leave the area.  Therefore, assuming that the pat down was never attempted, Higgins' conduct in striking Plaintiff and/or commanding the canine to apprehend Plaintiff for a simple misdemeanor,[FN4] is not objectively reasonable. *See Kelly v. Bender*, 23 F.3d 1328, 1331 (8th Cir. 1994).  This finding is further supported by Higgins' failure to  promptly discontinue the canine's "apprehension," which resulted in approximately thirty wounds/scars, once Plaintiff was lying on the ground.  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) " 'officials used force with a knowing willingness that [harm] occur,' "(quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotations omitted)).

> **FN4**.  Under the St. John Municipal Code, a police officer may properly arrest "any person he sees violating or who he has reasonable grounds to believe [has] violated any law of this State or has violated any ordinance of the City of St. John..." (Doc. #19-14: 3 §210.010.)  It is unlawful for any person (i) "to interfere in any manner with a Police Officer ∴ in the performance of [his] official duties, or to obstruct [said Officer] ∴ in any manner whatsoever while performing [his] duties...," (ii) "to resist arrest by any Police Officer," or (iii) "to fail or to refuse to obey any reasonable order or direction of any such Officer." (*Id*. at 3-4 §§ 210.020 & 210.030.)

Having found sufficient grounds for Plaintiff's excessive force claim as against Higgins, qualified immunity nonetheless shields a police officer from liability where "his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008) (quoting *Sanders v. City of Minneapolis*, 474 F.3d 523, 526 (8th Cir. 2007)).

The St. John Police Department Standard Operating Procedure regarding an officer's use of non-deadly force sets forth:

> ...[O]fficers shall use only that degree of force necessary to perform official duties, and shall not strike or use physical force on any person except when necessary in self-defense, in defense of another, or to overcome physical resistance to arrest, or to prevent escape of an arrested person.
> ∴∴
> Restraining Force: Use of physical force which is limited to holding and restraining arrested persons which shall include arm-lock and take-down holds.
>
> Physical Force: The necessary application of pain-inflicting or submission holds to overcome resistance to arrest.
>
> Defensive Force: The necessary infliction of physical battery with hands, fists, or defensive equipment to overcome violent resistance or to protect self or others from assault or injury. (Doc. #19-15, SOP #202 §§ III-IV.)

Assuming Plaintiff's version of the corroborated facts, Higgins' use of force in "apprehending" Plaintiff was *not* clearly excessive. First, the Court acknowledges that Higgins' and/or his canine's use of force-- in striking Plaintiff and causing him to fall to the ground-- was executed without explicit warning, despite his forethought to use the canine *if necessary* (*see infra* note 4). The Court further notes the substantial use of force employed by both the canine and Higgins. However, the Court declines to find that the force was not exercised in what the officer may have believed was self-defense and/or defense of others. Specifically, sitting alone in his patrol car in the middle of the night, Higgins was confronted by an intoxicated, unruly man, who demanded information about his son, and possibly a second man (with whom Johnny was arrested). Coupled with his belief that Plaintiff may have been carrying a weapon, Higgins' conduct in calling for the aid of his canine while effecting the seizure does not amount to a clearly excessive violation of which a reasonable officer should have known. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)("[Q]ualified immunity operates 'to protect officers from the sometimes hazy border between excessive and acceptable force.' Because the focus is on whether the officer

9

had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.") (quoting *Saucier*, 533 U.S. at 206)) (internal quotation marks omitted).

In contrast, once Plaintiff was lying on the floor, the Court finds Higgins' acquiescence to the canine's continued "apprehension"[FN5] to be clearly excessive. Apart from his resistance to the canine's biting, Plaintiff was within Higgins' control, was presumably unable to escape, and displayed no signs of violence. Therefore, while Higgins justifies the canine's involvement based upon Plaintiff's continued movement and/or resistance, it is unreasonable for a police officer to apply force and then to justify even greater force once the suspect resists. Accordingly, the Court finds that a reasonable officer would have known that the canine's continued apprehension violated Plaintiff's clearly established rights. *See* Doc. #19-17, SOP #408 § V(A) (While a canine is permitted to physically apprehend a suspect under certain circumstances; officers must not "use their dogs to intimidate, coerce, or frighten any person unnecessarily .·.·. [or] to physically apprehend a subject who is obviously not a threat, able to resist, or escape.").

### b. Eighth Amendment Claim

Next, Plaintiff's claim relating to the denial of proper medical care is analyzed under the Eighth Amendment. *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007) (The Eighth Circuit applies the Eighth Amendment's "deliberate indifference" standard to a pretrial detainee's claims that he was denied adequate medical care.") (citing *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir.2006), *cert. denied*,127 S.Ct. 2128 (2007)). *Accord Roe v. Crawford*, 514 F.3d 789, 798 (8th Cir. 2008). *But see Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (applying fourteenth amendment's "deliberate indifference" standard) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989), *cert. denied*, 510 U.S. 879 (1993)).

---

**FN5**. The Department promulgates the following Standard Operating Procedure with regard to canines:
> ... Should the suspect surrender, and if time and circumstances permits, the dog should not be allowed to physically apprehend the suspect. .·.·.
> Before releasing his dog, the canine officer/handler should have reasonable suspicion the suspect has committed a crime and/or is a danger to the public or officers. .·.·.
> Canine officer/handlers will issue three (3) verbal warnings before releasing the dog. If is is tactically unsound, or if time does not permit giving the verbal warning, the warning may be disregarded. The warning will consist of four basic parts, you are

>the police, ask for surrender, you have a dog, the dog may bite. (Doc. #19-17, SOP #408 §§ IV(f) & V(A)(2).)

Under this framework, Plaintiff must prove " 'that he suffered from one or more objectively serious medical needs, and that [Higgins] actually knew of but deliberately disregarded those needs.' " *Hartsfield*, 491 F.3d at 397 (quoting *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999)). The test, then, becomes whether a reasonable person would have known that Plaintiff required immediate medical attention at the time he was transported to the Police Department. *Grayson v. Ross*, 454 F.3d 802, 809 (8th Cir. 2006) (Medical needs were not "objectively serious" where, although initially combative, suspect sat calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail) (citing *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)).

Upon review, despite Plaintiff's allegations that he "was laying bleeding on the ground for an excessive period of time," the record does not support the same. Rather, Plaintiff testified that (i) "[t]hey got me up and handcuffed me and then got me up and put me in the police car," (ii) the patrol car left immediately, and (iii) he was transported to the police station, a couple of blocks away. Plaintiff was at the police station for approximately one hour, during which time paramedics provided first aid to his leg and head wounds, and Plaintiff declined ambulatory transportation to the hospital for further treatment.

While the departmental procedure relating to canine apprehension and/or bites calls upon officers to "render necessary any first aid," *see* Doc. #19-17 § V(B); the Court does not find that Higgins' conduct amounted to deliberate indifference. The record simply does not evidence that Plaintiff was exposed to an excessive health risk in being immediately transported to the police station and receiving emergency medical care from paramedics. Therefore, Plaintiff has failed to establish that Higgins "knowingly disregarded" his need for alternative care. *See Thorbes v. Bahl*, 180 F.App'x 603, 604 (8th Cir. 2006).

Accordingly, Plaintiff's claim shall be dismissed.

In accord with the above findings; Count I ,as it pertains to Defendant Higgins, will continue insofar as it relates to Plaintiff's excessive force claim.

*ii. Municipal Liability*

In certain cases, Section 1983 may afford relief as against a city, and/or city officials sued in their official capacity. City officials may be subject to liability where they have final policymaking authority,[FN6] and their challenged actions were "taken pursuant to a policy adopted by the official responsible under state law for making policy in that area of the city's business." *Angarita v. St. Louis County*, 981 F.2d 1537, 1546-47 (8th Cir. 1992) (citing *St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)).

One such situation is where the plaintiff proves that the city had a " 'policy or custom' of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue." *Rogers*, 152 F.3d 798-99 (citing *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (in turn quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body. Angarita v. St. Louis County, 981 F.2d 1537, 1546-47 (8th Cir. 1992) (citing *St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)). *See also Pembaur v. Cincinnati,* 475 U.S. 469, 480 (1986) (An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business.).

> **FN6**. As a threshold matter, the record evidences that Defendants Milam and Taylor have final policymaking authority. To wit, Milam stated, by way of affidavit, that he (i) serves as the St. John Chief of Police, and thereby (ii) has the final policy-making authority over the Department. Furthermore, while Taylor stated that Milam is the final policy-making authority and that no official policies are adopted without Milam's approval; he went on to state that he is familiar with the Department's policies and procedures and that he is responsible to oversee the budget. Thereupon, the Court finds that Taylor presumably has policy-making authority over the Department, i.e. funding for training, staffing, etc.

Upon review, the record does not evidence any policy or custom promulgated or followed by Defendants which caused the alleged Constitutional violation, i.e. excessive force.[FN7] Milam and/or Taylor stated that the Department's policies required officers to report incidents of force, and that they were unaware of any practice by the officers of failing to report, and/or misrepresenting incidents of, misconduct. The record further (i) evidences the Department's policy which sets forth the reporting and investigation requirements relating to the officers' use of force, and (ii) shows that Higgins submitted a "Use of Force" memo relating to the dispute in question. Milam further stated that he has had a practice of investigating all citizen complaints

12

made against his employees, there is no policy or custom allowing officers to use excessive force, and that (prior to the instant dispute) he had not been made aware of any formal complaints against Higgins or the subject canine. Thereupon, the Court finds insufficient evidence of a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct.

Alternatively, a city may be liable where there had been "a prior pattern of unconstitutional conduct that [was] so 'persistent and widespread' as to have the effect and force of law," and the pattern caused the alleged injury. *Andrews,* 98 F.3d at 1075 (quoting *Monell,* 436 U.S. at 691). A plaintiff must show " 'that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action.' " *Rogers*, 152 F.3d at 799 (citing *Andrews*, 98 F.3d at 1075) (in turn quoting *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992)). As stated above, the record is devoid of any *admissible* evidence that would tend to support Defendants' notice, and/or the existence, of any prior incidents relating to the instant claims.

Lastly, a city may be held liable under *Monell* for failure to train. *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006). To establish his claim, Plaintiff must prove that the city's "failure to train or supervise 'amounts to deliberate indifference to the rights of persons with whom the police come into contact' and the failure is the 'moving force behind the constitutional violation.' " *Id.* (quoting *Harris,* 489 U.S. at 389).

> **FN7**. The complaint and the record do not evidence any affirmative conduct, relevant here, by any defendant other than Higgins; and the only remaining claim as to the latter is excessive force. *See Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir.2005) ("Before a municipality can be held liable ∴∴ there must be an unconstitutional act by a municipal employee."). *See also Reasonover*, 47 F.3d at 583.

Relevant here, Milam stated that the City solely hires officers who graduate from certified police academies, and who are certified by the State of Missouri and the Department of Public Safety. Thereafter, officers are required to fulfill regular, State-mandated training and educational requirements. Milam further stated that he was responsible for the supervision of officers and that he always investigated each citizen complaint. Plaintiff has made no showing to rebut the foregoing, or to otherwise establish that the city and/or its officials failed to train/supervise the officers; and/or and that such conduct caused the alleged excessive force.

In accord with the above findings, Plaintiff's Section 1983 claims, based upon municipal liability, shall be dismissed.

## COUNT II: CONSPIRACY UNDER SECTIONS 1983 & 1985

To advance on his Section 1983 conspiracy claim, Plaintiff "must 'allege with particularity and specifically demonstrate material facts that the defendants reached an agreement.'" *Reasonover*, 447 F.3d at 582 (quoting *Marti v. City of Maplewood,* 57 F.3d 680, 685 (8th Cir.1995)). *See also White*, *supra*:

> Plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.* at 814 (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)) (internal citation omitted).

Despite an abundance of "conspiracy legalese," Plaintiff's complaint contains few factual allegations relating to the alleged conspiracy, i.e. that Defendants "combined and acted in concert by way of an agreement to inflict the wrongs against/ injuries upon Plaintiff"; "cover[ed] up their acts of police abuse"; and "ma[de] the various reports and t[ook] the enumerated actions against Plaintiff." Upon further review of the record, there is no evidence, circumstantial or otherwise, that Defendants formed an agreement to engage in the alleged acts or to otherwise violate Plaintiff's Constitutional rights. *See*, *e.g.*, *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992) (citing *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir. 1988) (conspiracy claim requires allegations of specific facts showing "meeting of minds" among alleged conspirators)); *accord Reasonover*, 447 F.3d at 582.

Conspiracy claims under Section 1985 require a similar showing. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). *See id*:

> [Plaintiff] must prove four elements: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right. *Mettler*,165 F.3d at 1206 (citing *Andrews*, 98 F.3d at 1079) (in turn citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)).

The Court again finds insufficient evidence that, *inter alia*, there was any agreement between Defendants and/or that any alleged conduct arose from an agreement. "Speculation and conjecture are not enough to prove a conspiracy exists." *See Mettler*, 165 F.3d at 1206.

Accordingly, Count II shall be dismissed.

# STATE LAW CLAIMS: COUNTS III-V

As an initial matter, Missouri law, with certain exceptions not applicable here, shields governmental entities from liability in tort. *Reasonover*, 447 F.3d at 586 (citing MO. REV. STAT. § 537.600). Therefore, the Court will address Plaintiff's tort claims insofar as they relate to Defendant Higgins.

### *i. Assault*

Under Missouri law, an assault claim requires prove of: (i) intent to cause bodily harm or offensive contact, or apprehension of either; (ii) conduct indicating such intent; and (iii) a resulting apprehension of bodily harm or offensive contact on the part of the plaintiff. *Phelps v. Bross*, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002) (quoting M.A.I. 23.01 (1981)).

Construing the record in the light most favorable to the nonmovant, Plaintiff has sufficiently established his assault claim. Notwithstanding the same, an officer charged by law with discretionary duties shall not be personally liable to an individual for damages unless plaintiff proves that he exercised unnecessary force. *See Reasonover*, 447 F.3d at 585 (" '[O]fficial immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice.' ") (quoting *Davis v. Bd. of Educ. of St. Louis*, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998)). Applied to the facts at bar, without having resolved those material and in dispute, the Court finds sufficient evidence that the alleged conduct, e.g, the canine's continued, actual and/or attempted biting of Plaintiff's person, was done in bad faith. Accordingly, Count III shall proceed to trial.

### *b. Extreme Emotional Distress*

To state a claim for extreme emotional distress, Plaintiff must demonstrate (1) extreme and outrageous conduct; (2) by a defendant who possesses an intent or reckless indifference to inflict extreme emotional distress upon the victim; and (3) which causes such emotional distress, which *in turn* results in bodily harm. *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (citing *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996)).

Upon review of the record, there is insufficient evidence to support a finding that Higgins' conduct caused emotional distress and/or that such distress resulted in physical injury. Specifically, while Plaintiff's complaint alleges that he suffers a fear of dogs, a fear of encountering dogs, and/or a fear of placing himself in a position wherein he may encounter dogs;

the record fails to evidence this alleged emotional distress, and/or any physical injury resulting therefrom. Accordingly, Count IV shall be dismissed

### c. *Negligent Infliction of Emotional Distress*

To prevail on his claim for negligent infliction of emotional distress, Plaintiff must show that (1) Higgins should have realized that his conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury is medically diagnosable significant. *Gibson*, 952 S.W.2d at 248-49 (citing *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. 1983)).

Aside from unsupported allegations, Plaintiff has failed to make any showing (i) that Higgins' conduct resulted in emotional distress and/or mental injury, (ii) that such injury was medically diagnosable and/or significant; or (iii) that he sought medical attention for, or was otherwise diagnosed with, the same. Accordingly, Count V shall be dismissed.

**A**n Order in accordance with this Memorandum shall be forthcoming.

**D**ated this 29th day of May, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**